REDMANN, Judge.
This appeal seeks reduction of a $21,500 damage award on jury verdict. We affirm.
Undisputed is that plaintiff worked six days a week before the accident, staying after hours or returning on Sunday if needed, and never missing a day, to' support his wife and six children. After plaster from defendant building owners’ ceiling fell and struck his forehead, he did not work for sixteen months, losing about $9,360 in wages while his family lived on unemployment benefits or welfare and food stamps and assistance from neighbors. Plaintiff testified he could not work during that period because of severe headaches with blurred vision — headaches that, he says, continued to the day of the trial and caused him to forego a higher-paying job because his job as an offshore night cook allows him to sit and rest when headache or blurred vision occurs.
Electroencephalogram, brain scan and x-rays were negative, as were orthopedic and neurological examinations. But an ophthalmologist found exophoria, a neuro-muscular abnormality which deprives plaintiff’s eyes of “the muscle power to work at a normal distance for any considerable period of time”, as well as of the ability to focus even momentarily at distances closer than four inches from the bridge of his nose (compared to three inches for a normal 46-year-old). This abnormality, also described as convergent insufficiency, is correctable by lenses. The ophthalmologist did not prescribe the lenses, which would have cost $50 to $75, because of the “economic problem” (though he did bill the lawyer for $100 for the examination). His conclusion was that the blow to the head from the falling plaster caused this abnormality and plaintiff’s resultant complaints. Other medical testimony corroborates the ophthalmologist’s assertion that his conclusion is not inconsistent with *891 a normal EEG, since damage to the nerves controlling the eye muscles may not appear on the EEG. The evidence sufficiently supports the ophthalmologist’s conclusion on causation.
We hold the $21,500 award to be within the jury’s “much discretion,” C.C. 1934(3). The supportive medical testimony does assert that the one demonstrated underlying cause of headache and blurred vision is correctable by $75 eyeglasses, and this correctability and its cost was reported to plaintiff, by letter to his attorney, seven and a half months after the accident. Plaintiff cannot collect damages for lost wages or headache and blurred vision which he could so easily have avoided thereafter. But we are not certain that the jury allowed for those items after seven and a half months. Presumably, compensation for the permanent neuro-muscular deficiency, requiring either surgical correction or constant use of corrective lenses, was a major portion of the jury’s award. (Plaintiff previously needed lenses only for reading.) If $21,500 be considered generous because apparently some $16,000 general damages are included, we cannot say it exceeds the upper limit of the jury’s “much discretion.”
Affirmed.